# In the United States Court of Federal Claims

No. 15-429
(Filed: 16 July 2020)
NOT FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| STUART NICHOLS AULD, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*Stuart Nichols Auld*, *pro se*, of Kansas City, MO.

*Sonia M. Orfield*, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, with whom was *Joseph H. Hunt*, Assistant Attorney General, *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Steven J. Gillingham*, Assistant Director, all of Washington, DC, for defendant. *Nanette Gonzales*, United States Department of the Interior, of Lakewood, CO, of counsel.

## OPINION AND ORDER

**HOLTE, Judge**.

On 28 April 2015, plaintiff filed a *pro se* complaint claiming, among other things, wrongful termination, breach of employment contract, breach of the implied covenant of good faith and fair dealing, and unlawful taking of his property and liberty interests in federal employment without due process of law, all arising from the termination of his employment with the U.S. Department of Interior, Bureau of Land Management ("BLM"). *See* Compl., ECF No. 1. While he was represented by counsel, plaintiff amended his complaint on 25 April 2016. *See* Am. Compl., ECF No. 28. Pending before the Court is plaintiff's motion for leave to file a second amended complaint. For the following reasons, the Court **DENIES** plaintiff's motion.

## I. Background

### A. Factual Background

The Court draws the following facts from plaintiff's complaint and proposed second amended complaint. All allegations are assumed to be true for the purposes of resolving plaintiff's motion. *See Marchena v. United States*, 128 Fed. Cl. 326, 330 (2016), *aff'd*, 702 F.

App'x 988 (Fed. Cir. 2017) ("A proposed amendment is futile if it would not survive a motion to dismiss."); *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) ("In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff.").

As alleged by plaintiff, in June 2009, plaintiff began working as a realty specialist for BLM.  Proposed 2d Am. Compl. ¶ 5, ECF No. 75.  His appointment was subject to a one-year probationary period.  *Id.* ¶ 3.  Plaintiff previously held a temporary appointment with the Department of Commerce, Bureau of Census, from 1998 to 2000.  *Id.* ¶¶ 2, 39.

Plaintiff had an agreement with BLM whereby the government would pay for his moving expenses from Kansas, where he resided prior to his employment, to Colorado, his BLM duty location.  *Id.* ¶ 46.  Payment was conditioned upon plaintiff remaining in federal government service for at least twelve months.  *Id.*  If plaintiff left his federal employment, he agreed to repay the relocation expenses.  *Id.* ¶ 47.  BLM advanced the moving expenses to plaintiff on the condition that he use these funds for moving expenses within the prescribed time.  Proposed 2d Am. Compl. ¶ 48.

Pursuant to his employment, plaintiff was required to obtain a government credit card to be used only for specific purposes, such as government travel.  *Id.* ¶ 51.  The card had an individual $1,000 credit line, and on several occasions, plaintiff used his government credit card for personal purchases.  *Id.* ¶¶ 51–52.  Plaintiff alleges an additional purpose for the card was emergency expenditures.  *Id.* ¶ 51.  Prior to using the card, plaintiff completed and passed training for the proper use of the government credit card.  *Id.*  In addition, BLM gave plaintiff oral instructions on how to use the card for government use and personal or individual charges.  Proposed 2d Am. Compl. ¶ 51.  Plaintiff's supervisor told plaintiff to circle personal charges on each monthly statement, write "I" or "Ind." to indicate the "individual charge," submit to the accounting department for approval, and pay the charges before the due date.  *Id.*  Plaintiff abided by this oral policy each time he used the card for personal charges.  *Id*. ¶ 52.  Plaintiff claims he was not provided with a written policy for the government credit card.  Compl. ¶ 8.

On 15 March 2010, plaintiff used his government credit card to purchase gasoline for his personal vehicle in what he describes as an "emergency situation."  Proposed 2d Am. Compl. ¶ 55.  Plaintiff explained that after putting $15 worth of gasoline in his vehicle, the machine would not accept his personal card, the gas station would not accept an out-of-state check, and plaintiff only had $10 in cash.  *Id.*  Plaintiff followed the oral policy conveyed to him for personal charges.  *Id.* ¶ 56.  On 30 April 2010, however, before plaintiff completed the one-year probationary period, plaintiff's supervisors told him his "use of the government credit card for personal charges constituted a 'fraud' and a 'crime.'"  *Id.* ¶ 57.  As a consequence, BLM terminated plaintiff's employment, citing performance and conduct-related matters.  *Id.* ¶ 58.  The termination letter specifically noted that plaintiff violated the government credit card policy by using it to purchase gasoline for his personal vehicle on four separate occasions.  *Id.*  The letter also stated that plaintiff failed to follow his supervisor's instructions on multiple occasions.  *Id.*

### B.  Procedural History

Plaintiff filed his complaint in this case on 28 April 2015 after pursuing similar litigation in Missouri state court and the United States District Court for the Western District of Missouri. *See* Compl.; *id.* ¶ 14.  After plaintiff requested appointment of counsel, the previous judge assigned to this case referred plaintiff to the Court of Federal Claims Bar Association Pro Bono Attorney Referral Program.  *See* Mot. to Appoint Counsel, ECF No. 16; Order, ECF No. 19.  As a result of this referral, plaintiff came to be represented by counsel.  *See* Order, ECF No. 22 (granting plaintiff's pro bono counsel's motion to substitute attorney).  Plaintiff's counsel filed an amended complaint on 25 April 2016.  *See* Am. Compl., ECF No. 28.  The amended complaint asserts two counts:  claiming BLM breached an alleged employment agreement with plaintiff; and claiming BLM's actions were arbitrary and capricious.  *See id.* ¶¶ 32–48.

On 13 July 2016, the government filed a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and for summary judgment.  *See* Mot. to Dismiss Pursuant to Rule 12(b)(1) & for Summ. J., ECF No. 35.  This motion remains pending.

After a disagreement on litigation strategy, on 20 September 2016, plaintiff's pro bono counsel moved to withdraw, which the Court granted on 22 November 2016.  *See* Mot. to Withdraw as Att'y, ECF No. 40; Order, ECF No. 46.  After three more referrals for potential pro bono representation, plaintiff was unable to obtain new representation and now proceeds *pro se*. On 4 March 2019, plaintiff filed a motion for leave to file a second amended complaint.  *See* Mot. to Am. Compl., ECF No. 74.  The government filed its opposition to plaintiff's motion on 18 March 2019.  *See* Def.'s Opp'n to Pl.'s Mot. to Am. Compl., ECF No. 76.  The previous judge assigned to this case granted plaintiff leave to file a reply to the government's opposition, which plaintiff filed on 22 July 2019.  *See* Pl.'s Reply, ECF No. 77.  On 29 July 2019, this case was transferred to the undersigned Judge.  *See* Order, ECF No. 78.

After multiple attempts to schedule oral argument on plaintiff's motion to amend, the Court now proceeds on the papers.  *See* Order, ECF No. 96.

### C.  Plaintiff's Motion for Leave to File Second Amended Complaint

Plaintiff's filing comprises a 41-page memorandum seeking leave to file a second amended complaint (ECF No. 74), a second 43-page memorandum in support of the motion, and a proposed second amended complaint spanning over 100 pages with exhibits (ECF No. 75).  *See generally* Mot. to Am. Compl.; Proposed 2d Am. Compl.  The memorandum does not present legal argument in favor of amendment; rather, the memorandum continues to assert the same allegations and legal arguments on the merits of plaintiff's numerous claims.  *See generally* Mot. to Am. Compl.  In addition to numbered paragraphs, the two memoranda and proposed second amended complaint include pasted partial images of receipts, accounting statements, emails, checks, and other documents with no clear caption or description.  *See generally id.*; Proposed 2d Am. Compl.  Plaintiff asserts the following counts:

### COUNT I

**DEFENDANTS' DOI/BLM UNFAIRLY, UNILATERALLY BREACHED (IN BAD FAITH) THEIR EXPRESSED AND IMPLIED, IN FACT, ORAL AND WRITTEN BILATERAL CONTRACTS/AGREEMENTS WITH PLAINTIFF USING FALSE, UNSUBSTANTIATED, INVALID, VOID, WAIVED AND/OR LEGALLY ESTOPPED ALLEGATIONS, THAT DEFENDANTS WERE LEGALLY BARRED FROM ASSERTING;**

**QUANTUM MERUIT/QUANTUM VALEBANT RELIEF; AND**

**VIOLATION OF FEDERAL ACTS, STATUTES, REGULATIONS, POLICIES AND PROCEDURES AS TO PLAINTIFF'S FEDERAL EMPLOYEE EMPLOYMENT RIGHTS**

**(VARIOUS FORMS OF COMPLETE RELIEF, INCLUDING EQUITABLE RELIEF, ARE ALSO AVAILABLE FROM THE COFC IN CONJUNCTION WITH UNILATERAL BAD FAITH BREACHES OF BILATERAL CONTRACTS/AGREEMENTS AND VIOLATION(s) OF APPLICABLE MONEY MANDATING ACTS, STATUTES, REGULATIONS, POLICIES AND PROCEDURES AND/OR IN SETTLEMENT OF ACCOUNTS AND/OR IN REMAND ORDERS AND/OR IN PAYING ILLEGAL EXACTION DAMAGES)**

## COUNT II
**BACK PAY ACT** (5 CFR Part 550 - PAY ADMINISTRATION (GENERAL), SUBPART H Back Pay (§§ 550.801 - 550.808)**AND FEDERAL EMPLOYEES SALARY ACT/5 U.S. CODE SUBCHAPTER III - GENERAL SCHEDULE PAY RATE 5 U.S.C. 5332-5333-5335- UNDER PAYMENT OF SALARY CLAIMS; AND VIOLATION OF FEDERAL ACTS, STATUTES, REGULATIONS, POLICIES AND PROCEDURES AS TO PLAINTIFF'S FEDERAL EMPLOYEE EMPLOYMENT RIGHTS**

## COUNT III
**EQUAL PAY ACT AND FEDERAL EMPLOYEES SALARY ACT/5 U.S. CODE SUBCHAPTER III - GENERAL SCHEDULE PAY RATE/CLASSIFICATION/UNDER PAYMENT OF SALARY CLAIMS**

## COUNT IV
**DEMAND FOR ACCOUNTING AND SETTLEMENT OF ACCOUNTS PURSUANT TO 28 U.S.C. § 1494**

## COUNT V
**CONSTITUTIONAL VIOLATIONS- (PROPERTY AND LIBERTY INTERESTS IN FEDERAL EMPLOYMENT UNCONSTITUTIONALLY SEIZED/5th AMENDMENT TAKING W/O DUE PROCESS**

**REINSTATEMENT REQUIRED TO ADDRESS NEW ALLEGATIONS OF WRONG DOING FILED IN THESE PROCEEDINGS AND NEVER RAISED BEFORE (NO FEDERAL EMPLOYEE DUE PROCESS-BACK TO "GO");**

**REQUEST FOR SPECIFIC PERFORMANCE BY DEFENDANTS UPON ALL ORAL
AND WRITTEN, EXPRESS OR IMPLIED, IN FACT, BILATERAL
CONTRACTS/AGREEMENTS AS PLAINTIFF SUBSTANTIALLY PERFORMED**

**COUNT VI
REMAND ACT ORDER & MO SERVICE LETTER VIOLATION
(Mo. Rev. Stat. § 290.140)**

**COUNT VII
FLSA VIOLATIONS**

**COUNT VIII
ILLEGAL EXACTION**

**COUNT IX
FDCPA/FCRA/DCA VIOLATIONS**

*See generally* Proposed 2d Am. Compl. (all emphasis and spacing in original).

While plaintiff sets forth his claims according to nine separate counts, the Court construes plaintiff's various claims, in the light most favorable to plaintiff, as follows:  (1) wrongful termination; (2) breach of employment contract; (3) bad faith claim; (4) various statutory claims; (5) due process and equal protection claims; (6) takings claim; and (7) a request for equitable relief.[1]  *See generally id.*

## II.  Discussion

### A.  Standard of Review

#### 1.  RCFC 15 and Amending Pleadings

RCFC 15 permits a party to amend its pleadings as a matter of course either (A) within "21 days after service of the pleading;" or (B) "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under RCFC 12(b), (e), or (f), whichever is earlier."  RCFC 15(a)(1).  If neither situation applies, as is the case here, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  RCFC 15(a)(2).  When the Court's leave is required to amend a pleading, as is the case here, RCFC 15(a)(2) instructs that "[t]he court should freely give leave when justice so requires."  *Zenith Radio Corp. v. Hazeltine Research., Inc.*, 401 U.S. 321, 330 (1971).  "It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court."  *Id.*

---

[1] To the extent plaintiff attempts to seek relief according to various provisions of state law or other miscellaneous statutes not supported by the factual allegations, such claims are unpersuasive, meritless, or unnecessary for resolving the issues currently before the Court.

Interpreting the parallel Federal Rule of Civil Procedure governing amendment, the Supreme Court explained:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rule requires, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). "Futility of the proposed amendment is an adequate reason to deny leave to amend." *Cultor Corp. v. A.E. Staley M'fg Co.*, 224 F.3d 1328, 1333 (Fed. Cir. 2000). "A proposed amendment is futile if it would not survive a motion to dismiss." *Marchena*, 128 Fed. Cl. at 330. "When a party faces the possibility of being denied leave to amend on the ground of futility, that party . . . must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006).

## 2. Subject-Matter Jurisdiction

The Tucker Act provides this Court jurisdiction to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). "The Tucker Act does not, of itself, create a substantive right enforceable against the United States, but the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Smith*, 709 F.3d at 1116 (internal citation omitted). "To be cognizable under the Tucker Act, the claim must be for money damages against the United States, and the substantive law must be money-mandating." *Id.*

While this Court holds *pro se* complaints "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a plaintiff's *pro se* status "does not excuse its failures, if such there be." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995); *see also Ellis v. United States*, 796 F. App'x 749, 750 (Fed. Cir. 2020) (per curiam) ("Although we generally interpret the pleadings of a *pro se* plaintiff liberally, *pro se* status cannot excuse a failure to demonstrate that jurisdictional requirements are met." (internal citation omitted)); *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not . . . take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only.").

## B. The Parties' Arguments

Although plaintiff's opening brief focuses on the merits of his claims, in his reply to the government's opposition, plaintiff argues his proposed second amended complaint "better presents to this Court ALL of Plaintiff's non-frivolous, legitimate claims[,] many of which are based upon newly discovered evidences and causes of action." Pl.'s Reply, Ongoing Objs., Denials & Legal Defenses to Def.'s Opp'n to Pl.'s Mot.(s) for Leave to Am./Suppl. Compl.(s) at

¶ 5, ECF No. 77 ("Pl.'s Reply").  Additionally, plaintiff argues because this case is, at least procedurally, "still in its infancy," with no scheduled discovery or trial, amendment will not prejudice the government.  *Id.* ¶ 9.  Plaintiff asserts his proposed second amended complaint "merely corrects the omissions of causes of action by Plaintiff's pro bono attorneys who tried to simplify the case too much from Plaintiff's Original Complaint and did not dig deep enough to uncover (or investigate) ALL of Plaintiff's causes of action."  *Id.*

The government opposes plaintiff's request to amend his complaint a second time.  The government argues plaintiff's "amended complaint is futile because, even with his proposed amendments, Mr. Auld's claims cannot withstand the Government's motion to dismiss or for summary judgment."  Def.'s Opp'n at 2.  The government further argues, "the Court does not possess jurisdiction over any of Mr. Auld's claims related to the termination of his employment and thus amendment is futile."  *Id.* at 12.

**C.  Analysis**

The government opposes plaintiff's motion for leave to file a second amended complaint as futile because it argues the Court lacks jurisdiction over the claims in the proposed second amended complaint.  The Court therefore focuses its analysis on whether amendment will be futile by engaging in a jurisdictional analysis of the claims plaintiff asserts in his proposed second amended complaint.  *See Marchena*, 128 Fed. Cl. at 330 ("A proposed amendment is futile if it would not survive a motion to dismiss.").

**1.  Plaintiff's Wrongful Termination Claim**

Plaintiff alleges his termination violated statutes and regulations governing federal employment.  Proposed 2d Am. Compl. ¶ 127.  Terminated federal employees with probationary status have limited rights of appeal.  *Mastriano v. Fed. Aviation Admin.*, 714 F.2d 1152, 1155 (Fed. Cir. 1983); *see also House v. Merit Sys. Prot. Bd.*, 298 F. App'x 982, 983 (Fed. Cir. 2008) ("A probationary employee has very limited appeal rights."); *Walker v. Merit Sys. Prot. Bd.*, 594 F. App'x 984, 986 (Fed. Cir. 2014) ("When reviewing cases involving probationary employees, the Board's jurisdiction is particularly limited.").  Plaintiff admits he was a probationary employee but requests the Court disregard this fact because he was within 30 days of completing his probationary period.  *See* Proposed 2d Am. Compl. ¶ 18 ("Plaintiff maintains that the . . . probationary period was substantially completed on April 30, 2010, however, his complete performance is excused because the other contracting party, Defendants, committed the first material breach. . . . Plaintiff still maintains that he substantially completed the probationary period as there was only about 30 days remaining . . . .").

The probationary period for federal employees ends only "when the employee completes his or her scheduled tour of duty."[2]  5 C.F.R. § 315.804(b).  Since plaintiff did not fully complete his probationary period, he can only appeal his termination to the Merit Systems Protection Board ("MSPB") if he alleged "the agency's action resulted from discrimination based upon

_____

[2] Moreover, probationary employees are excluded from the definition of "employee" in 5 U.S.C. § 7511.  As such, any statute that provides remedies for federal "employees" does not assist plaintiff because he is not properly considered a federal employee.

partisan political reasons or marital status." *House*, 298 F. App'x at 983.  Though the Court understands plaintiff's frustration that he nearly completed his probationary period, the law is quite clear that he was still probationary.  *See Walker*, 594 F. App'x at 985 (holding that an employee was properly considered a probationary employee even though she was only two weeks away from completing her probationary term).  Limiting the rights afforded to probationary employees "was a conscious design by Congress to afford federal managers great latitude in removing probationary employees before they became vested with the rights afforded tenured employees." *Bante v. Merit Sys. Prot. Bd.*, 966 F.2d 647, 650 (Fed. Cir. 1992).

Plaintiff's probationary status limited his right of appeal to the MSPB.  *See Rehling v. United States*, 11 Ct. Cl. 334, 335–36 (1986) ("No statute, regulation, or constitutional provision entitles such an employee to judicial vindication of his or her discharge. . . . Congress' sweeping reform of the Civil Service laws does not provide for review in this court of personnel actions of the nature taken in this case against probationers.").  Thus, this Court does not have subject-matter jurisdiction over plaintiff's wrongful termination claims because he was a probationary employee.

Plaintiff further alleges he is a former federal employee who returned to federal employment with all rights associated with such employment. *E.g.*, Proposed 2d Am. Compl. ¶ 90.  Plaintiff's proposed amended complaint, however, contained concessions that he was a probationary employee. *See, e.g.*, Proposed 2d Am. Compl. ¶ 3.

The Federal Circuit has held that an agency did not exceed its authority when it imposed a new probationary period on a former employee after a 13-year gap in service. *Shelton v. Dep't of Air Force*, 382 F.3d 1335, 1337 (Fed. Cir. 2004).  In *Shelton*, the Federal Circuit held an agency imposing a new probationary period was proper and found it relevant that the plaintiff was fully informed about the probationary period and accepted it. *Id.*  Here, plaintiff was informed that his appointment was subject to a one-year probationary period.  Proposed 2d Am. Compl. ¶ 3.  Plaintiff's consent to the probationary period can be reasonably implied by his acceptance of the position without commenting on or objecting to the probationary period. While the gap between plaintiff's different federal jobs was not as long as 13 years, his two jobs were different.  His first federal job was as a deputy director for the Bureau of the Census. Proposed 2d Am. Compl. Exs. (Notice of Personnel Action dated 30 September 2000 listing plaintiff's position as Deputy Director with Bureau of the Census).  Thus, he was not returning to the same position.  Therefore, even though plaintiff previously held a federal position, it was not improper for BLM to impose a new probationary period, a condition of employment which plaintiff accepted when he took the position.  Further, since he was properly considered a probationary employee, his termination appeal rights were limited, and the Court lacks jurisdiction over his wrongful termination claim. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) ("Nor is there jurisdiction [in the Court of Federal Claims] over the wrongful discharge claims.").

## 2.  Plaintiff's Breach of Employment Contract Claim

Plaintiff alleges the government breached a purported employment contract.  Proposed 2d Am. Compl. ¶ 23.  Federal Circuit precedent establishes, however, that "[a]bsent specific

legislation, federal employees derive the benefits and emoluments of their positions from appointment rather than from any contractual or quasi-contractual relationship with the government." *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995) (quoting *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985)). As such, "a presumption exists that federal employees serve by appointment, not by contract." *Anderson v. United States*, 64 Fed. Cl. 759, 762 (2005). An employee, who serves by appointment, and not by contract, does not have an employment contract with the federal government. *See Calvin v. United States*, 63 Fed. Cl. 468, 473 (2005) ("Federal employees do not have contractual relationships with the government, barring an explicit agreement to the contrary executed by a federal officer who has authority to contract, plaintiffs are appointees, and their claims of breach of employment contract are precluded.").

To the extent plaintiff claims he held a separate employment contract with the government, to state a claim for breach of contract, a plaintiff must plausibly allege the existence of a contract with the United States, which requires: "(1) mutuality of intent to contract; (2) consideration; (3) an unambiguous offer and acceptance; and (4) actual authority on the part of the government's representative to bind the government." *Biltmore Forest Broad. FM, Inc. v. United States*, 555 F.3d 1375, 1380 (Fed. Cir. 2009) (quoting *Schism v. United States*, 316 F.3d 1259, 1278 (Fed. Cir. 2002) (en banc)). Plaintiff's proposed second amended complaint, despite its length, does not appear to plausibly allege any of the necessary requirements for the Court to find plaintiff had an employment contract with the government.

Plaintiff acknowledges in his proposed second amended complaint that he served by appointment. Proposed 2d Am. Compl. ¶ 70 (referencing "his *appointment* to the Realty Specialist position with DOI/BLM" (emphasis added)). Since plaintiff served by appointment and his proposed second amended complaint does not plausibly allege an employment contract with the government, no contract with the government provides jurisdiction over this employment claim as required under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1); *see also Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1353 (Fed. Cir. 2011) ("[Tucker Act] jurisdiction requires . . . a *non-frivolous allegation* of a contract with the government." (first emphasis added)).

### 3. Plaintiff's Bad Faith Claim

Plaintiff's proposed second amended complaint also alleges actions BLM took, specifically that his six-month review was missing from his personnel file and that the employment agreement contained an incorrect handwritten statement that he resigned which constituted bad faith. Proposed 2d Am. Compl. ¶¶ 77, 126. Plaintiff also makes vague allegations that the government breached an implied covenant of good faith and fair dealing. *Id.* ¶ 139.

"Government officials are presumed to carry out their duties in good faith." *Spezzaferro v. Fed. Aviation Admin.*, 807 F.2d 169, 173 (Fed. Cir. 1986). This strong presumption requires "well-nigh irrefragable proof" to overcome the deference given to administrative actions. *Sanders v. U.S. Postal Serv.*, 801 F.2d 1328, 1331 (Fed. Cir. 1986) (quoting *Fucik v. United States*, 655 F.2d 1089, 1097 (Ct. Cl. 1981)). "The plaintiff must produce clear and strong

evidence of bad faith to overcome this presumption." *Ho v. United States*, 49 Fed. Cl. 96, 107 (2001). As previously addressed, plaintiff was a probationary employee, whose post-termination rights are statutorily limited. Besides making bare allegations that the moving expenses agreement contained misinformation and that he was unaware that the credit card policy would result in adverse personnel action, plaintiff has not alleged sufficient facts to support an allegation of bad faith. Additionally, no employment contract existed here so as to form the basis of the good faith and fair dealing requirement. *See Scott Timber Co. v. United States*, 692 F.3d 1365, 1372 (Fed. Cir. 2012) ("[B]ecause the existence of the covenant of good faith and fair dealing depends on the existence of an underlying contractual relationship, there is no claim for a breach of this covenant where a valid contract has not yet been formed."). Thus, the Court lacks subject-matter jurisdiction over plaintiff's bad faith claim, and implied covenant claim, even assuming he pleaded sufficient facts to support it.

### 4. Plaintiff's Statutory Claims

Plaintiff's proposed second amended complaint references numerous statutory provisions. First, plaintiff alleges the termination procedure BLM used violated 5 U.S.C. § 4303, which requires unacceptable performance actions against employees for failure to meet performance standards to meet certain procedural requirements. Proposed 2d Am. Compl. ¶ 136. Plaintiff further cites the requirement in 5 U.S.C. § 4302(a)(3) that performance appraisals be used as bases for either rewarding or removing employees. Plaintiff contends his termination violated this provision because BLM did not use his six-month review as the basis for his termination. Title 5 U.S.C. § 4302, however, does not limit agencies' rights to terminate employees to occasions when an employee receives an "unacceptable performance" appraisal. 5 U.S.C. § 4302. Moreover, the statute does not create a cause of action for a violation of the provision against a probationary employee. *See* 5 U.S.C. § 4303(f)(2) ("This section does not apply to . . . the reduction in grade or removal of an employee . . . who is serving a probationary or trial period . . . .").

Plaintiff also references 5 U.S.C. § 4303 to argue he did not receive the employee protections that provision contemplates. Proposed 2d Am. Compl. ¶ 136. Probationary employees are specifically excluded from that provision. *See* 5 U.S.C. § 4303(f)(2). Since plaintiff is not a federal employee, these provisions do not provide plaintiff any rights. *See* 5 U.S.C. § 7511(a)(1)(A)(i) (defining an "employee" as "an individual in the competitive service . . . *who is not serving a probationary or trial period*" (emphasis added)). Even if plaintiff fell within the definition of "employee," these provisions are not money-mandating such that they would provide this Court jurisdiction under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1); *see also United States v. Testan*, 424 U.S. 392, 401 (1976) (rejecting the argument that violation of federal employment laws "automatically creates a cause of action against the United States for money damages"); *Smith*, 709 F.3d at 1116 ("To be cognizable under the Tucker Act, the claim must be for money damages against the United States, and the substantive law must be money-mandating.").

Next, plaintiff alleges the government violated the Fair Labor Standards Act ("FLSA"). Proposed 2d Am. Compl. ¶ 162. "The FLSA only imposes liability in three circumstances:" (1) "when employers fail to pay a minimum wage;" (2) "when less than the specified amount of

overtime pay is received; and" (3) "when employers retaliate against employees due to certain activities." *Casaretti v. United States*, 130 Fed. Cl. 588, 590 (2017). Plaintiff does not plausibly allege he falls under any of these circumstances; therefore, the FLSA cannot serve as a basis for this Court's jurisdiction.

Plaintiff also asserts a claim under the Equal Pay Act. Proposed 2d Am. Compl. ¶ 113. The government argues this claim is futile because the statute of limitations for an Equal Pay Act claim has passed. Def.'s Opp'n to Pl.'s Mot. to Am. at 9. "The applicable statute of limitations for Equal Pay Act claims is found in the Fair Labor Standards Act, 29 U.S.C. § 255(a), which establishes a two-year limitations period for violations of the Equal Pay Act. When an employer's violation of the Act is shown to be 'willful,' however, the statute of limitations is extended to three years." *Santiago v. United States*, 107 Fed. Cl. 154, 158 (2012). Plaintiff's probationary employment was terminated in 2010, five years before filing his initial complaint in 2015 and nine years before filing his proposed second amended complaint in 2019, so under review of either document, an Equal Pay Act claim is time-barred and consequently futile.

Plaintiff additionally alleges entitlement to relief under the Back Pay Act. Proposed 2d Am. Compl. ¶¶ 95–107. If plaintiff had a Back Pay Act claim and was not a probationary employee, the MSPB, and not the Court of Federal Claims, would have jurisdiction to review that claim. *See United States v. Fausto*, 484 U.S. 439, 454 (1988) ("[W]e find that under the comprehensive and integrated review scheme of the [Civil Service Reform Act], the Claims Court . . . is not an 'appropriate authority' to review an agency's personnel determination."); *Read v. United States*, 254 F.3d 1064, 1067–68 (Fed. Cir. 2001) ("*Fausto* establishes that the existence of the [MSPB's] jurisdiction to take such action precludes the Court of Federal Claims from entertaining [the appellant's] back pay suit based upon his removal."). The Court does not possess jurisdiction to hear a Back Pay Act claim, and plaintiff's claim under that Act is therefore futile.

### 5. Plaintiff's Due Process and Equal Protection Claims

Plaintiff alleges his termination and prior district court proceeding deprived him of his due process rights. Proposed 2d Am. Compl. ¶ 123. Additionally, plaintiff alleges violation of his procedural due process rights. *Id.* ¶ 134. "The law is well settled that the Due Process clauses of both the Fifth and Fourteenth Amendments do not mandate the payment of money and thus do not provide a cause of action under the Tucker Act." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013). Plaintiff's due process claims, as a consequence, fall outside this Court's jurisdiction and are therefore futile.

### 6. Plaintiff's Takings Claim

Plaintiff claims his termination was an illegal taking and therefore a violation of the Fifth Amendment because he had a vested property and liberty interest in his federal employment. Proposed 2d Am. Compl. ¶ 134. Under the Federal Circuit's two-part test to determine whether a taking occurred, the Court must first "determine whether the claimant has established a property interest for purposes of the Fifth Amendment." *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004). "It is well-settled law that there is no property

interest on the part of a probationary employee regarding his job." *Biagioli v. United States*, 2 Cl. Ct. 304, 309 (1983). Thus, given plaintiff's probationary status, he cannot establish a property interest in his employment to support a takings claim. *See id.* As a consequence, the Court lacks subject-matter jurisdiction over plaintiff's takings claim.

Further, even if plaintiff had a property interest in his employment, he cannot concurrently assert that the taking was unlawful. "Tucker Act jurisdiction over Fifth Amendment takings claims is premised on the requirement that the government action was legitimate." *Kalos v. United States*, 87 Fed. Cl. 230, 237 (2009); *see also Blanchette v. Ct. Gen. Ins. Corps.*, 419 U.S. 102, 126 n.16 (1974) ("'The taking of private property by an officer of the United States for public use, without being authorized, . . . is not an act of the government,' and hence recovery is not available in the Court of Claims." (quoting *Hooe v. United States*, 218 U.S. 322, 336 (1910)); *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802 (Fed. Cir. 1993) ("[The] claimant must concede the validity of the government action which is the basis of the taking claim to bring suit under the Tucker Act, 28 U.S.C. § 1491."). Since plaintiff asserts the alleged taking was unlawful, his complaint fails to "concede the validity of the government action," which is required to establish a taking claim in this Court. *Tabb Lakes, Ltd.*, 10 F.3d at 802. Accordingly, the Court lacks subject-matter jurisdiction over plaintiff's takings claim.

### 7. Plaintiff's Request for Equitable Relief

Plaintiff seeks equitable relief in the form of reinstatement to his former position with BLM, citing this Court's power to "issue [o]rders directing restoration to . . . position, placement in appropriate duty, status, and correction of applicable records in order to complement the relief afforded by a money judgment . . . ." Proposed 2d Am. Compl. ¶ 155 (quoting *Testan*, 424 U.S. at 404) (internal quotation marks omitted). Plaintiff's first amended complaint, however, already seeks equitable relief in the form of "[r]estor[ing] Mr. Auld to his former position of Realty Specialist with BLM." Am. Compl. at 11. To the extent plaintiff attempts to invoke this Court's limited jurisdiction "to grant equitable relief ancillary to claims for monetary relief," such a request is already before the Court. *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998). Plaintiff need not amend his first amended complaint in order to seek such relief. *See Robinson v. Detroit News, Inc.*, 211 F. Supp. 2d 101, 114 (D.D.C. 2002) ("An amended complaint is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory or could not withstand a motion to dismiss.").

## III. Conclusion

The Court has considered all allegations in plaintiff's proposed second amended complaint and all arguments he makes in support of amending his complaint. To the extent not discussed herein, plaintiff's other claims are unpersuasive, meritless, or unnecessary for resolving the issues currently before the Court. Plaintiff's pursuit to amend his complaint is futile because this Court lacks jurisdiction to consider his numerous claims. The Court therefore **DENIES** plaintiff's motion for leave to file a second amended complaint.

As ordered on 17 April 2020, now that the Court has ruled on plaintiff's motion, the Court now **LIFTS** the stay regarding consideration of the government's motion to dismiss plaintiff's amended complaint and motion for summary judgment, which was filed in 2016.  *See* Order, ECF No. 96 (order staying consideration of the government's motion to dismiss and motion for summary judgment until plaintiff's motion decided).  Due to the lapse in time since filing, the government shall have until **17 August 2020** to file a supplemental brief, if necessary. Plaintiff shall have until **17 September 2020** to file a response to the government's supplemental brief, if filed.  The parties shall limit their respective filings to no more than 10 pages.

**IT IS SO ORDERED.**

<u>s/ Ryan T. Holte</u><br>
RYAN T. HOLTE<br>
Judge