# In the United States Court of Federal Claims

No. 15-429
(Filed:  16 February 2023)
NOT FOR PUBLICATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
STUART NICHOLS AULD,                       *
                                            *
                      Plaintiff,            *
                                            *
v.                                          *
                                            *
THE UNITED STATES,                         *
                                            *
                      Defendant.            *
                                            *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

     *Stuart Nichols Auld*, *pro se*, of Kansas City, MO.

     *Jana Moses*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant.

## OPINION AND ORDER

**HOLTE, Judge**.

     Plaintiff alleges the government breached an agreement when the Bureau of Land Management recovered previously reimbursed moving expenses from him and arbitrarily and capriciously terminated him.  The government filed a motion for summary judgment on Count I and a motion to dismiss for lack of subject matter jurisdiction on Count II.  The government asserts one year of service is required for moving expenses to be reimbursed.  For the following reasons, the Court (1) grants the government's motion for summary judgment as to Count I, ECF No. 35, because the reimbursement document requires one year of service; and (2) grants the government's motion to dismiss as to Count II, ECF No. 35, for lack of subject matter jurisdiction.

## I.    Background

### A.    Factual History

     The Court draws the following facts from plaintiff's amended complaint and construes the facts in the light most favorable to plaintiff.  *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) ("In deciding a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all uncontroverted factual allegations in the complaint, and construes them in the light most favorable to the plaintiff."); *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (examining the non-movant's evidence in the light most favorable to the non-movant and drawing all justifiable inferences in favor of the non-movant during summary judgment proceedings).  The Court further draws from the facts found in the parties' summary judgment briefings.  *See generally* Def.'s Mot. to Dismiss and for Summ. J. ("MTD & MSJ"), ECF No. 35; Pl.'s Aff. & Decl., ECF No. 54; Def.'s Reply in Supp. of its MTD & MSJ ("Gov't's Supp. Reply"), ECF No. 60; Pl.'s Resp. to Def.'s MTD & MSJ ("Pl.'s Suppl. Br."), ECF No. 110; Def.'s Reply to Pl.'s Suppl. Opp'n to Def.'s Mot. to Dismiss & for Summ. J. ("Gov't's Reply Suppl. Br."), ECF No. 114.

On 8 June 2009, plaintiff began working as a realty specialist for Bureau of Land Management ("BLM") conditioned on completing a one-year probationary period.  Am. Compl. at 3–4, ECF No. 28.  Plaintiff previously held a temporary appointment with the Department of Commerce from October 1998 to October 2000 as "a Regional Administrative Specialist for Leasing, assisting with the Census 2000 efforts."  *Id.* at 2.  Per BLM's All Applicant Data Report, plaintiff "stated he was not a current Federal employee when applying for the position."  MTD & MSJ at 2.  On 5 May 2009, plaintiff signed a document titled "Employment Agreement" (hereinafter "Exhibit C"), which provided the government would reimburse plaintiff for "the cost of travel, transportation, and other allowable expenses including transportation and storage of household goods and personal effects" in connection with his "transfer for duty" from Kansas—where he resided prior to his employment—to Colorado, his BLM duty location.[1]  Compl., Ex. C., ECF No. 1-1; App. to MTD & MSJ at 23; *see* Am. Compl. at 3.  Exhibit C also provided "Reimbursement will be in accordance with the Administrative Expenses Act of 1946, as amended, and under Public Law 89-516, approved July 21, 1966, and regulations issued by the General Services Administration."  Compl., Ex. C; App. to MTD & MSJ at 23.  According to Exhibit C, the employee "agree[s] to remain in the Federal Government service for twelve (12) months following the effective date of transfer," and if the employee "fail[s] to complete the above agreement, any moneys expended by the Federal Government because of such travel, transportation, and other allowable expenses shall be recovered from [the employee] as a debt due the United States, unless [the employee] may become separated from the Government for reasons beyond [the employee's] control."  Compl., Ex. C; App. to MTD & MSJ at 23; *see also* Am. Compl. at 4.

The government provided Mr. Auld a credit card to be used only for employment-related expenses, such as travel expenses.  16 July 2020 Order at 2, ECF No. 98; *see* Am. Compl. at 5.  Before using the card, Mr. Auld received oral instructions of how to handle personal or individual charges.  16 July 2020 Order at 2; Am. Compl. at 5; *see* Pl.'s Aff. & Decl. at 4–5.  Plaintiff's first individual charge was "for a small amount of gas to see if the new card was active and operating," the second individual charge "was for a glass of wine at dinner," and the third charge was for "gas for a friend's car for a free ride to the airport which actually saved the Government a large taxi cab bill and/or mileage and parking fees for 2 weeks."  Pl.'s Aff. & Decl. at 5.  In December 2009, the government requested plaintiff return approximately $2,300 it had provided him for relocation expenses, claiming plaintiff had never used them.  App. to MTD & MSJ at 101–04.  Before plaintiff completed the one-year probationary period, BLM

---

[1] Plaintiff filled out and signed Exhibit C after completing the necessary paperwork and background check for employment.  *See* Am. Compl. at 3.  While the Exhibit C is titled "Employment Agreement," the document relates to the moving expenses associated with his location.  *See* Compl., Ex. C.

terminated plaintiff's employment, citing performance and conduct-related matters.  16 July 2020 Order at 2.  "The termination letter specifically noted plaintiff violated the government credit card policy by using it to purchase gasoline for his personal vehicle on four separate occasions[, and] the letter also stated that plaintiff failed to follow his supervisor's instructions on multiple occasions."  *Id.* (citations omitted).  After the government terminated plaintiff, it requested plaintiff repay his relocation expenses and deducted the amounts from his final paycheck.  Am. Compl. at 7; App. to MTD & MSJ at 122–23.

### B.    Procedural History

On 28 April 2015, plaintiff filed a complaint in the Court of Federal Claims after he pursued similar litigation in Missouri state court and the United States District Court for the Western District of Missouri.  *See* Compl. at 15, ECF No. 1.  The government filed a motion to dismiss on 29 June 2015.  *See* Def.'s Mot. to Dismiss, ECF No. 5.  Plaintiff filed an amended complaint on 25 April 2016, reducing his claims from nine counts to two counts:  (1) "The BLM breached its employment agreement with Mr. Auld"; and (2) "BLM's actions were arbitrary and capricious."  *See* Am. Compl. at 8–10 (cleaned up).  On 13 July 2016, the government filed a combined motion to dismiss on Count II and motion for summary judgment on Count I.  *See* MTD & MSJ.

On 4 March 2019, plaintiff, proceeding *pro se*, filed a motion for leave to file a second amended complaint.  *See* Pl.'s Mot. to Amend Compl., ECF No. 74.  The government filed its opposition to plaintiff's motion on 18 March 2019.  *See* Def.'s Opp'n to Pl.'s Mot. to Amend, ECF No. 76.  On 22 July 2019, plaintiff filed a reply to the government's opposition by leave of court from the previous judge.  *See* Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. to Amend Compl., ECF No. 77.  On 29 July 2019, this case was reassigned to the undersigned Judge.  *See* 29 July 2019 Order, ECF No. 78.  This Court denied plaintiff's motion to file a second amended complaint on 16 July 2020, holding the complaint was futile because the Court lacked jurisdiction to consider plaintiff's numerous amended claims.  *See* 16 July 2020 Order at 12.  In the July 2020 order, the Court also allowed the government to file a supplemental brief in support of its motion to dismiss and motion for summary judgment on or before 17 August 2020, to which plaintiff could respond by 17 September 2020.  *Id.* at 13.  The Court limited these filings to no more than 10 pages.  *Id.*

On 3 August 2020, plaintiff filed a motion for reconsideration ("Mot. for Recons. of 16 July 2020 Order"), ECF No. 99, and the government responded on 7 August 2020 ("Def.'s Resp. to Pl.'s Mot. for Recons."), ECF No. 100.  The Court denied plaintiff's motion for reconsideration on 10 August 2020.  *See* 10 Aug. 2020 Order, ECF No. 101.  On 27 August 2020, plaintiff moved to remand the case to Department of the Interior ("DOI")/BLM.  *See* Pl.'s Mot. for Remand to DOI/BLM, ECF No. 105.  On 9 September 2020, the Court stayed consideration of plaintiff's motion for remand and all other pending motions, including motions plaintiff filed after the date of the Order and any deadlines for future responses, until resolution of the government's motion to dismiss and motion for summary judgment.  9 Sept. 2020 Order, ECF No. 108.  The Court also clarified, although the government did not file a supplemental brief by 17 August 2020, plaintiff could still file a supplemental brief by 17 September 2020.  *Id.* at 2; *see* 16 July 2020 Order at 13.  On 15 September 2020, plaintiff moved for leave to file a

supplemental pleading or correct the amended complaint.[2]  *See* Mot. for Leave to Correct Am. Compl., ECF No. 109.  The Court's 9 September 2020 Order stayed the new motion.  *See* 9 Sept. 2020 Order at 2.

On 17 September 2020, plaintiff filed a supplemental brief.  *See* Pl.'s Suppl. Br.  The supplemental brief was 44 pages and included attachments totaling 145 pages, far exceeding the 10-page limit the Court's 16 July 2020 Order imposed.  *See id.*; 16 July 2020 Order at 13.  The government did not file its allowed supplemental brief but instead filed a reply to plaintiff's supplemental brief on 28 September 2020.  *See* Gov't's Reply Suppl. Br.; *see also* 16 July 2020 Order.  Plaintiff moved for leave to file a supplemental declaration on 1 October 2020 despite the Court's stay of further motions.[3]  *See* Mot. for Leave to File Suppl. Decl., ECF No. 115; 16 July 2020 Order.  On 14 October 2020, plaintiff moved to strike the government's reply brief, arguing the Court did not provide for such a reply but instead ordered plaintiff's supplemental brief to be the last filing with further motions and filing deadlines stayed. Mot. to Strike Reply, ECF No. 116.  The government responded to both the motion for leave and motion to strike on 16 October 2020, arguing plaintiff's supplemental briefing, which was 135 pages over the maximum allotted pages, was contingent on the government filing a supplemental brief, and the motion for supplemental declaration is stayed pursuant to the 9 September 2020 Order.[4]  Def.'s Resp. to Pl.'s Mot. for Suppl. Decl. & Mot. to Strike at 2, ECF No. 117.  On 3 November 2020, plaintiff filed another motion to strike the government's response to the previous motion to strike.[5]  Mot. to Strike Def.'s Resp., ECF No. 118.  The government filed a response, ECF No. 119, urging the Court to deny plaintiff's motion to strike.  Plaintiff filed an amended motion to remand, ECF No. 122, on 22 December 2022.

## II.   Parties' Arguments

### A.   Plaintiff's Arguments

In his complaint, plaintiff asserts two counts:  (1) "The BLM breached its employment agreement with Mr. Auld"; and (2) "BLM's actions were arbitrary and capricious."  Am. Compl. 8–10 (cleaned up).  On Count I, plaintiff states Exhibit C incorporates statutory rights, found in 5 U.S.C. § 5723(b), entitling him to travel expenses.[6]  *Id.* at 8.  According to plaintiff, the government may only recover travel and transportation funds granted to an employee if the employee violates the agreement—"in other words, leaves federal service voluntarily before the end of one year."  *Id.*  Plaintiff alleges he did not voluntarily leave government service and

---

[2] As plaintiff's arguments in this motion are sufficiently similar to those in his proposed second amended complaint, and as these arguments remain unpersuasive, meritless, or futile, the Court, therefore, **DENIES** plaintiff's motion for leave to file a supplemental pleading or correct the amended complaint, ECF No. 109.  *See* 16 July 2020 Order at 12.

[3] Since the Court allowed previous supplemental declarations, the Court allows *pro se* plaintiff's supplemental declaration to fully consider his arguments.  The Court, therefore, **GRANTS** plaintiff's motion for leave to file a supplemental declaration, ECF No. 115.

[4] The Court **DENIES** plaintiff's motion to strike, ECF No. 116, in order to fully consider the parties' arguments.

[5] As the Court denies plaintiff's motion to strike, ECF No. 116, the government's response to this motion, ECF No. 117, and plaintiff's corresponding motion to strike the government's response are moot.  The Court **FINDS AS MOOT** plaintiff's motion to strike, ECF No. 118.

[6] Section 5723 provides for travel and transportation expenses of new appointees and student trainees.

4

intended to remain an employee of the government for more than twelve months, so he is entitled to recover all amounts the government assessed to recover advanced moving expenses. *Id.* at 8–9.

In Count II, plaintiff alleges the government's decision to terminate him was arbitrary and capricious. *Id.* at 9. Plaintiff argues the government did not utilize the probationary period to evaluate plaintiff's fitness for government service, as 5 C.F.R. § 315.803 requires, when it terminated him for violating a government credit card policy. *Id.* at 9. Plaintiff explains while the government "condoned [his] use of the credit card for individual charges for approximately eleven months," the government expressly "permitted [him] to use the credit card for personal expenses," and the government "never indicated to [him] that charges on his card would be a basis for negatively evaluating his job performance or conduct during the probationary period." Am. Compl. at 9. Seeing "no rational connection between [his] alleged violations of the 'credit card policy,' a policy which BLM never properly conveyed to Mr. Auld and BLM's termination action," plaintiff claims the government's actions were arbitrary, capricious, and contrary to law. *Id.* at 10.

Plaintiff also challenges the sufficiency of his termination letter. *Id.* Plaintiff cites 5 C.F.R. § 315.804 which directs the government to notify probationary employees in writing why they are being separated and the effective date of action; "The information in the notice as to why the employee is being terminated shall, at a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct." *Id.* at 10; 5 C.F.R. § 315.804. "Other than the alleged violation of the 'credit card policy,'" plaintiff claims he received "no indication [his] job performance or conduct during his time at BLM failed to demonstrate his fitness or his qualifications for continued employment as a Realty Specialist." Am. Compl. at 10.

In response to the government's motions, plaintiff provided examples of federal employees "making much greater and more griev[ous] misuse of their credit cards (with NO individual line of credit) who were not terminated." Pl.'s Aff. & Decl. at 4–5. Plaintiff further asserted "NO individual charge card policy or prohibitions or written information was given to Plaintiff before any of the first individual charges were made." *Id.* at 5. Plaintiff states an additional purpose for the card was for expenditures "in an emergency." Am. Compl. at 6; Pl.'s Aff. & Decl. at 3. The first item charge was "for a small amount of gas to see if the new card was active and operating before Plaintiff headed out of town for training." Pl.'s Aff. & Decl. at 5. The second item charge "was for a glass of wine at dinner." *Id.* The third charge was for "gas to a friend's car for a free ride to the airport which actually saved the Government a large taxi cab bill and/or mileage and parking fees for 2 weeks." *Id.* Plaintiff maintains "no disciplinary action was taken on these 3 individual charge card matters at the time[, so] the defendants were therefor[e] legally, equitably estopped from trying to 'stack the charges' with these forgiven incidents during training." *Id.* at 6.

### B.    Government's Arguments

On Count I, the government moves the Court to grant summary judgment in its favor "because there is no dispute as to the facts surrounding the agency's recoupment of its payments to Mr. Auld related to moving expenses and the agency is entitled to judgment as a matter of

law." MTD & MSJ at 13.  The government claims Exhibit C's incorporation of the terms of the Administrative Expenses Act of 1946 ("the Act" or "Act") supports both recovery efforts. *Id.* at 18.  The Act permits agencies to pay "the travel expenses of an employee transferred in the interest of the Government from one official station or agency to another for permanent duty." § 5724(a)(1) (reimbursing moving expenses for transferring employees).  The Act and its regulations also permit such expenses for "new appointees appointed to [their] first official station."  41 C.F.R. § 302-1.1(a); *see* § 5723(b) (reimbursing moving expenses for newly appointed employees).  The government argues both payment recoupments were proper because plaintiff "was never an 'employee transferring' nor was he a 'new appointee appointed to his first official station.'"  MTD & MSJ at 18.  Specifically, the government notes plaintiff "was not a new appointee, as he had previously been employed by the Department of Commerce from 1998-2000," and "he was not an 'employee transferring' [because] his earlier employment preceded his re-employment by nearly a decade, and therefore could not qualify him as a transferring employee."  *Id.*  "By its own terms, the agreement did not provide for the reimbursement of Mr. Auld's moving expenses, and thus all payments made under the agreement were unauthorized."  *Id.*

The government moves the Court to dismiss plaintiff's amended complaint Count II for lack of jurisdiction because plaintiff's challenge to his termination is "well beyond this Court's jurisdiction."  MTD & MSJ at 10 (citing *United States v. Fausto*, 484 U.S. 439, 454 (1988)).  The government also relies upon text and applications of the Civil Service Reform Act of 1978 ("CSRA") to demonstrate lack of jurisdiction as the CSRA establishes the primacy of MSPB for administrative resolution of disputes over adverse personnel action.  MTD & MSJ at 13–15.  The government argues plaintiff's claim 5 C.F.R. § 315.804 was not satisfied (because he was given no indication he failed to demonstrate his fitness and qualifications for continued employment) "is a direct challenge to his termination and one that . . . is precluded under *Fausto*" and the CSRA.  *Id.* at 16.  The government further asserts plaintiff's probationary employment status limits his rights of appeal; plaintiff may only bring two specific claims of wrongful termination before the Merit Systems Protection Board ("MSPB").  *Id.* at 8.  In plaintiff's termination letter, the government explained plaintiff "was a probationary employee with no statutory right to appeal his termination, but that he could appeal to the [MSPB] if he alleged that his termination was the result of political reasons or due to his marital status."  *Id.*  Plaintiff acknowledged receipt of the termination letter by signature dated 30 April 2010.  *Id.*  The government also contends plaintiff's discharge claim sounds in tort and is precluded under the Tucker Act.  Gov't's Supp. Reply at 8–9.  Following its tort theory, the government contends the Court of Federal Claims does not enjoy jurisdiction because plaintiff has not indicated a connection between a contract and alleged tortious conduct, such as breach.[7]  *Id.*

## III.    Applicable Legal Standards

### A.    Subject Matter Jurisdiction

---

[7] The government cites multiple memoranda to show it was dissatisfied with plaintiff's conduct during employment. *See* App. to MTD & MSJ at 99, 109, 112, 115.  The government cites supervisory counseling with plaintiff on issues such as plaintiff's improper use of his government credit card during travel, continual lack of familiarity with department regulations and materials, repeated failure to follow directions, and questionable acts.  *Id.*

The Tucker Act grants this court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). "The Tucker Act . . . is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. . . . [T]he Act merely confers jurisdiction upon it whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

In considering a motion to dismiss for lack of subject matter jurisdiction, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) ("In determining jurisdiction, a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."). Plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). "If the court finds that it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

The Court of Federal Claims holds *pro se* plaintiffs "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see Shapiro v. United States*, 143 Fed. Cl. 376, 378 (2019). While the court generally interprets the pleadings of *pro se* plaintiffs liberally, "*pro se* status cannot excuse a failure to demonstrate that jurisdictional requirements are met." *Ellis v. United States*, 796 F. App'x 749, 750 (Fed. Cir. 2020). Thus, a *pro se* plaintiff—like any other plaintiff—must establish the court's jurisdiction. *Riles v. United States*, 93 Fed. Cl. 163, 165 (2010).

### B.    Summary Judgment

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A court shall not grant summary judgment if "the dispute about a material fact is 'genuine.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is considered genuine if the "evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Id.* "In determining whether there is a genuine issue of material fact, the trial court must assume that the evidence presented by the non-movant is credible and draw all justifiable inferences therefrom in the non-movant's favor." *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (citing *Anderson*, 477 U.S. at 255). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* (citing *Anderson*, 477 U.S. at 248). "Contract interpretation is a matter of law and thus amenable to decision on summary judgment." *Gov't Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 814 n.1 (Fed. Cir.1988); *see, e.g., NVT Techs. Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004); *H.B. Mac, Inc. v. United States*, 153 F.3d 1338, 1345 (Fed. Cir. 1998).

The party seeking summary judgment bears the burden of establishing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the

moving party has met this burden, the burden shifts to the non-movant who must present sufficient evidence to show a dispute over a material fact allowing a reasonable factfinder to rule in its favor. *Anderson*, 477 U.S. at 256. The evidence does not need to be admissible, but mere denials, conclusory statements, or evidence not significantly probative will not defeat summary judgement. *Celotex*, 477 U.S. at 324.

## IV.   Whether BLM Breached the Signed Document Providing for the Reimbursement of Moving Expenses

In Count I, plaintiff alleges the government breached Exhibit C, which allows for the advancement of moving expenses. *See* Am. Compl. at 8–9. Plaintiff alleges Exhibit C constitutes a valid contract with the government. *See* Pl.'s Aff. & Decl. at 14, 19; Compl., Ex. C; *see also* 5 U.S.C. § 5724(i) (stating employee must agree in writing to "remain in the Government service for 12 months" in exchange for reimbursement of moving expenses). In the Court's 16 July 2020 Order, the Court found plaintiff to be an employee by "appointment," which inherently limits his ability to contract with the government. *See* 16 July 2020 Order at 9; *see Kania v. United States*, 650 F.2d 264, 268 (Ct. Cl. 1981) (quoting *Shaw v. United States*, 640 F.2d 1254, 1260 (1981)) ("[I]t has long been held that the rights of civilian and military public employees against the government do not turn on contract doctrines but are matters of legal status even where compacts are made.").

The government does not contest the contractual relationship between the plaintiff and the government. *See* Gov't's Supp. Reply at 6 ("While Mr. Auld has produced a contract between himself and the [government], it is narrow in scope, and limited to the sole issue of relocation expenses.") (citing App. to MTD & MSJ at 23). The government instead moves to dismiss Count I under summary judgment because the Act and its related regulations "expressly limit reimbursement to transfer employees or new employees." MTD & MSJ at 11, 16–19; *see* § 5724(i); Compl., Ex. C. As the parties rely on Exhibit C and its incorporation of § 5724(i)— providing the reimbursement of moving expenses—the Court will also rely on Exhibit C to determine if the Act and language of Exhibit C limits recovery. *See* Am. Compl. at 3–4; MTD & MSJ at 3; § 5724(i).

When reading the four corners of Exhibit C, the document lacks clarity unless read in conjunction with the incorporated Act. *See* Compl., Ex. C. ("Reimbursement will be in accordance with the Administrative Expenses Act of 1946, as amended, and under Public Law 89-516, approved July 21, 1966, and regulations issued by the General Services Administration."); § 5723(b) (relating to expenses for new employees); § 5724(i) (relating to expenses for transferring employees). Reading the Act, the HR Specialist at the Department of the Interior or plaintiff's supervisor presumably presented the Exhibit C form agreement to all new employees in relation to employment and the Act required. *See* Pl.'s Resp. to Mot. to Dismiss 2. Section 5724(i) of the Act states:

An agency may pay travel and transportation expenses (including storage of household goods and personal effects) and other relocation allowances under this section and sections 5724a, 5724b, and 5726(c) of this title when an employee is transferred within the continental United States only after *the employee agrees in*

>    *writing to remain in the Government service for 12 months after his transfer, unless separated for reasons beyond his control that are acceptable to the agency concerned.*  If the employee violates the agreement, the money spent by the Government for the expenses and allowances is recoverable from the employee as a debt due the Government.

§ 5724(i) (emphasis added).  Exhibit C directly incorporates and references the language of § 5724(i):

>    I agree to *remain in the Federal Government service for twelve (12) months following the effective date of transfer*, with the understanding that the cost of travel, transportation, and other allowable expenses including transportation and storage of household goods and personal effects will be paid by the Government.

>    Reimbursement will be in accordance with the Administrative Expenses Act of 1946, as amended, and under Public Law 89–516, approved July 21, 1966, and regulations issued by the General Services Administration.

>    In the event I fail to complete the above agreement, any moneys expended by the Federal Government because of such travel, transportation, and other allowable expenses shall be recovered from me as a debt due to the United States, unless I may become *separated from the Government for reasons beyond my control and acceptable to the Bureau or Office concerned*.

Compl., Ex. C (emphasis added); App. to MTD & MSJ at 23; *see* § 5724(i).  Exhibit C's incorporation of the Act also includes § 5723, which pertains to reimbursement of moving expenses for new employees. Compl., Ex. C.  The relevant language of § 5723 provision is virtually identical to § 5724(i) for transferring employees.  §§ 5723(b), 5724(i).  Reading Exhibit C in light of the referenced Act, Exhibit C is a valid contract for moving expenses subject to plaintiff's one year of service.  *See* Compl., Ex. C; App. to MTD & MSJ at 23; § 5724(i).  In other words, the government promised to pay plaintiff's moving expenses in exchange for plaintiff "agree[ing] to remain in the Federal Government service for twelve (12) months." Compl., Ex. C; App. to MTD & MSJ at 23; *see* § 5724(i).  The Court now must determine whether the Act and the language of the contract entitle plaintiff to reimbursement.

The language of Exhibit C, incorporating the statutory language, states the government will reimburse the "cost of travel, transportation, and other allowable expenses including transportation and storage of household goods and personal effects" if plaintiff remains "in the Federal Government service for twelve (12) months." Compl., Ex. C; App. to MTD & MSJ at 23; *see* § 5724(i).  If plaintiff does not finish the twelve-month probationary period, or "fail[s] to complete the above agreement," the government can recover "any moneys expended by the Federal Government because of such travel, transportation, and other allowable expenses." *Id.*

Plaintiff avers the government may only recover travel and transportation funds it granted to an employee if the employee violates the agreement—"in other words, [if the employee] leaves federal service voluntarily before the end of one year." Am. Compl. at 8.  Plaintiff argues

he did not voluntarily leave government service and intended to remain an employee of the government for more than twelve months, so he is entitled to recover all amounts the government assessed. *Id.* at 8–9. Plaintiff also contends the Court should consider eleven months close enough to the required twelve months. *See id.* at 9.

When interpreting a contract, the Court looks at the document's plain language. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (citations omitted). Unambiguous contract terms must be given their plain and ordinary meaning. *Landmark Land Co., Inc. v. FDIC*, 256 F.3d 1365, 1373 (Fed. Cir. 2001) (citation omitted); *see also Hunt Constr. Grp., Inc. v. United States*, 281 F.3d 1369, 1373 (Fed. Cir. 2002) (citing *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1469 (Fed. Cir. 1998)) ("When the contract language is unambiguous on its face, our inquiry ends, and the plain language of the contract controls."). A contract is interpreted "as a whole and 'in a manner which gives reasonable meaning to all its parts and avoids conflict or surplusage of its provisions.'" *United Int'l Investigative Servs. v. United States*, 109 F.3d 734, 737 (Fed. Cir. 1997) (quoting *Granite Constr. Co. v. United States*, 962 F.2d 998, 1003 (Fed. Cir. 1992)).

Exhibit C and the Act expressly provide plaintiff must complete a twelve-month probationary period. Compl., Ex. C; App. to MTD & MSJ at 23; § 5724(i). According to the plain terms of Exhibit C and the Act eleven months, therefore, does not suffice. *See McAbee Constr. Inc.*, 97 F.3d at 1435 (citations omitted). Regarding plaintiff's position concerning his intent to remain, the word "intent" appears nowhere in the document nor the Act. *See* Compl., Ex. C; App. to MTD & MSJ at 23; § 5724(i). Following the plain language of Exhibit C and the Act, plaintiff "fail[ed] to complete the above agreement" by failing to remain employed for the twelve-month probationary period. Compl., Ex. C; App. to MTD & MSJ at 23; § 5724(i); *see McAbee Constr. Inc.*, 97 F.3d at 1435 (citations omitted); *Landmark Land Co., Inc.*, 256 F.3d at 1373 (citation omitted); *United Int'l Investigative Servs.*, 109 F.3d at 737; *Hunt Const. Grp., Inc.*, 281 F.3d at 1373.

According to Exhibit C and the Act, if the employee "fail[s] to complete the above agreement, any moneys expended by the Federal Government" in relation to the listed allowable expenses "shall be recovered from [employee] as a debt due the United States." Compl., Ex. C; App. to MTD & MSJ at 23; § 5724(i). The only exception listed is if the employee "become[s] separated from the Government for reasons beyond [the employee's] control and acceptable to the Bureau or Office concerned." *Id.* As for the "reasons beyond [the employee's] control" exception, plaintiff argues the government's decision to terminate him was beyond his control. Am. Compl. at 8–9. The government cites "both performance and conduct-related matters" as the basis of plaintiff's termination. MTD & MSJ at 8. The government counseled plaintiff on "his failure 'to familiarize himself with pertinent regulations and manuals,' his 'lack of attention to detail,' his 'lack of interest/seriousness in [his] job,' and his '[c]ontinued failure to follow instructions and doing things his way." *Id.* at 4–6 (quoting App to. MTD & MSJ at 110). The government also counseled plaintiff numerous times on his misuse of the government credit card for personal expenses. *Id.* at 7–8. These actions were within plaintiff's control and not "reasons beyond" plaintiff's control. Compl., Ex. C; App. to MTD & MSJ at 23. For these reasons, the government terminated plaintiff's employment and recovered the advanced moving expenses from plaintiff in accordance with Exhibit C and the incorporated Act. Compl., Ex. C; § 5724(i).

Per the plain language of Exhibit C and the Act, as the government terminated plaintiff before the end of the twelve-month probationary period for reasons within his control, the government is entitled to recover the funds it advanced related to the "cost of travel, transportation, and other allowable expenses, including transportation and storage of household goods and personal effects." Compl., Ex. C; App. to MTD & MSJ at 23; § 5725(i); *McAbee Constr. Inc.*, 97 F.3d at 1435 (citations omitted). Applying the facts to the interpretation of the contract, no "genuine dispute as to any material fact" exists and summary judgment in favor of the government is appropriate. RCFC 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Gov't Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 814 n.1 (Fed. Cir. 1988) ("Contract interpretation is a matter of law and thus amenable to decision on summary judgment.").

## V.     Whether the Court has Jurisdiction over Plaintiff's Arbitrary and Capricious Discharge Claim

In Count II, plaintiff argues the government did not utilize the probationary period to evaluate plaintiff's fitness for government service when it terminated him for violating the government's credit card policy. Am. Compl. at 9–10. Seeing no rational connection between his alleged violations of the credit card policy and the termination action, plaintiff contends the government acted arbitrarily and capriciously. *Id.* The government requests this Court dismiss plaintiff's second count for lack of jurisdiction because plaintiff's challenge is personnel-related and "well beyond this Court's jurisdiction." MTD & MSJ at 10 (citing *United States v. Fausto*, 484 U.S. 439, 454 (1988)).

The Court considered a similar argument in reviewing plaintiff's motion for leave to file a second amended complaint, and while plaintiff's current count is a distinct argument only now ripe to answer, the Court notes much of the background law is the same. *See* 16 July 2020 Order at 7–11. Congress enacted the CSRA to create an elaborate framework for evaluating adverse personnel actions against federal employees. *Fausto*, 484 U.S. at 443. The CSRA established the MSPB through the Office of Personnel Management ("OPM"). 5 U.S.C. § 1204. While this court once reviewed federal employment disputes under the Tucker Act, in *United States v. Fausto*, the Supreme Court held "under the comprehensive and integrated review scheme of the CSRA, the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination." *Fausto*, 484 U.S. at 454; *see also Read v. United States*, 254 F.3d 1064, 1066 (Fed. Cir. 2001) (stating only the MSPB is authorized to review removals of federal employees). Further, the CSRA does not extend administrative or judicial review to non-preference members, such as probationary employees. *Fausto*, 484 U.S. at 443; *see* 5 U.S.C. § 7511(a)(1)(A) (contrasting probationary employees from preference employees). Plaintiff "bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). "If the court finds that it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006).

Although the Court understands plaintiff's frustration of nearly completing his probationary period, the government terminated plaintiff while still a probationary employee. *See supra* Section IV; 16 July 2020 Order at 7–8. Plaintiff's probationary status limited his right of appeal to the MSPB. *See Rehling v. United States*, 11 Cl. Ct. 334, 335–36 (1986) ("No statute, regulation, or constitutional provision entitles such an employee to judicial vindication of his or her discharge. . . . Congress'[s] sweeping reform of the Civil Service laws does not provide for review in this court of personnel actions of the nature taken in this case against probationers."). Plaintiff's signed termination letter confirmed he "was a probationary employee with no statutory right to appeal his termination" except to the MSPB if plaintiff suspects "his termination was the result of political reasons or due to his marital status." MTD & MSJ at 8. Regardless of the agency's reasons for discharging plaintiff, this Court does not have authority to determine whether such action was arbitrary and capricious. *See Fausto*, 484 U.S. at 455. Further, even if plaintiff had a claim to bring to the MSPB, the United States Court of Appeals for the Federal Circuit, not this court, conducts judicial review of MSPB decisions. 5 U.S.C. § 7703(2)(b)(1)(A).

Even if plaintiff fell within the definition of "employee," the relevant provisions are not money-mandating to provide this Court jurisdiction under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1); *see also United States v. Testan*, 424 U.S. 392, 401 (1976) (stating an alleged violation of federal employment laws does not "automatically creates a cause of action against the United States for money damages"); *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("To be cognizable under the Tucker Act, the claim must be for money damages against the United States, and the substantive law must be money-mandating."). Due to plaintiff's probationary status and failure to provide money-mandating authority sufficient under the Tucker Act, the Court lacks jurisdiction to consider plaintiff's claim for an arbitrary and capricious employment action. *See* § 7511(a)(1)(A)(ii); *Fausto*, 484 U.S. at 454; *Matthews*, 72 Fed. Cl. at 278. The government's motion to dismiss Count II for lack of subject matter jurisdiction is, therefore, granted. *Reynolds*, 846 F.2d at 748; *Matthews*, 72 Fed. Cl. at 278.

## VI.    Whether the Court Should Remand to the DOI/BLM

The Tucker Act grants the Court authority to "order the remand of appropriate matters to an administrative or executive body or official" with direction the Court deems proper and just. RCFC 52.2(a); *see* 28 U.S.C. § 1491(a)(2). There are several reasons why remand may be appropriate, all off which require an agency to have a previous position on an issue. *See SKF USA Inc. v. United States*, 254 F.3d 1022, 1028–29 (Fed. Cir. 2001) (stating when an agency action is reviewed by the courts, the agency may take one of five positions, all of which relate to a previous agency decision). As long as the request is "substantial and legitimate," and not "in bad faith or frivolous," the Court should grant the motion. *Id.* at 1028. "A court must also 'consider whether remand would unduly prejudice the non-moving party.'" *Keltner v. United States*, 148 Fed. Cl. 552, 562 (2020) (quoting *Am. Waterways Operators v. Wheeler*, 427 F. Supp. 3d 95, 98 (D.D.C. 2019), *remand reconsideration denied*, 507 F. Supp. 3d 47 (D.D.C. 2020)).

In this case, plaintiff requests remand to the DOI/BLM on several grounds, including DOI/BLM employees' alleged fraudulent activities and a lack of notice of his due process rights.

Pl.'s Mot. for Remand to DOI/BLM at 3. There is, however, no board or agency decision for this Court to remand as the agency did not issue an initial decision on any appeal of plaintiff's termination. The Court is, accordingly, without authority to remand plaintiff's case.

If plaintiff wished to appeal his termination decision, the governing body at the DOI/BLM is the MSPB, which plaintiff received notice of in his termination letter. *See* MTD & MSJ at 8; *see generally Read v. United States*, 254 F.3d 1064, 1066 (Fed. Cir. 2001) ("only the Merit Systems Protection Board, and not the Court of Federal Claims, is authorized to review removals of federal employees"). As discussed *supra*, the only termination grounds on which the MSPB will hear a claim for probationary employees is if plaintiff suspects his termination was the result of political reasons or due to his marital status. *See supra* Section V; MTD & MSJ at 8. Further, the United States Court of Appeals for the Federal Circuit, not this court, conducts judicial review of MSPB decisions. 5 U.S.C. § 7703(2)(b)(1)(A).

## VII.   Conclusion

The Court has considered all allegations in plaintiff's amended complaint and related motions. To the extent not discussed herein, plaintiff's other claims are unpersuasive, meritless, or unnecessary for resolving the issues currently before the Court. For the foregoing reasons, the Court **GRANTS** the government's motion for summary judgment on Count I, ECF No. 35, and **GRANTS** the government's motion to dismiss on Count II, *id.*

The Court also **DENIES** plaintiff's motion to remand to the DOI/BLM, ECF Nos. 105 & 122, and **DENIES** plaintiff's motion for leave to file supplemental pleading or correct amended complaint, ECF No. 109. The Court **GRANTS** plaintiff's motion for leave to file supplemental declaration, ECF No. 115. The Court **DENIES** plaintiff's motion to strike, ECF No. 116, and **FINDS AS MOOT** plaintiff's motion to strike, ECF No. 118. The Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge
